UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FOGG FILLER COMPANY,

    Plaintiff/Counter-Defendant,          Case No. 1:15-cv-724

v.                                                           HON. JANET T. NEFF

CLOSURE SYSTEMS
INTERNATIONAL, INC.,

    Defendant/Counter-Claimant.
_____/

## **AMENDED OPINION**[1]

Plaintiff Fogg Filler Company filed this patent action against Defendant Closure Systems International, Inc., alleging infringement of a bottle capping device, Patent No. 6,508,046 (the '046 patent) entitled "Self-Adjusting Capping Chuck Assembly For Filler And/or Capper Device And Associated Method." The case is before the Court for a decision on claim construction following a hearing. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

## **I. Background**

On January 21, 2003, the United States Patent and Trademark Office issued the '046 patent to Plaintiff (Compl. ¶ 1, ECF No. 1 at PageID.2). Plaintiff alleges that Defendant "makes or has made, uses, offers to sell and/or sells a capping chuck under the trademark Flex-Chuck that infringes one or more claims of the '046 patent, in violation of 35 U.S.C. §271" (*id.* ¶ 8).

---

[1]The Court's May 2, 2017 Opinion (ECF No. 43) is amended at PageID.355 to delete the sentence: As Plaintiff notes, such movement allows the cap to be engaged by the cap engaging jaw while moving side-to-side with the outer cam. The sentence is replaced with the following sentence: As Plaintiff notes, "[t]he ability to have such movement, allows the cap to be engaged by the cap engaging jaw while moving side to side within the outer cam" (ECF No. 35 at PageID.159).

As described by Plaintiff, the '046 patent is directed to a self-adjusting capping chuck that is used with filler and/or capper devices (Pl's. Br., ECF No. 35 at PageID.145). "In filler equipment and capping equipment, the capping chuck is the part that grasps and retains a cap that is then twisted onto a bottle that is being filled by the filler equipment" (*id.*). "The invention of the '046 patent is a capping chuck that is self-adjusting so as to better capture and retain a cap of, for example, a beverage container" (*id.*). Prior to the invention, it was not uncommon for conventional capping chucks: (1) to inadvertently drop caps during the filling and capping process, leaving bottles uncapped; (2) to mar or scratch caps or damage their tamper bands during installation; and (3) to inadequately grip the cap for twisting onto the container, resulting in an inefficient capping process that potentially caused further damage to the cap (*id.* at PageID.145-146).

According to Plaintiff, "[t]he invention of the '046 patent solved these problems with an adjusting jaw that is readily displaceable and expandable in a plurality of directions" (ECF No. 35 at PageID.146). It "allow[s] caps with wider or narrower dimensional tolerances to still be properly positioned within the cap engaging jaw and properly installed on the bottles being filled" (*id.*). "Because the invented chuck positively grasp[s] the caps about their circumference, slippage [is] substantially reduced, resulting in less marring and scratching of the caps, as well as less damage to their tamper bands" (*id.*).

At issue on claim construction are asserted claims concerning the structure of the capping chuck, claims 1-5 and 7-10 of the '046 patent (Jovanovic Decl. Ex. A, ECF No. 35-2 at PageID.166-173), and terms and phrases therein (underlined/italicized) as follows.

    1. A capping chuck assembly for use in association with a capper device, comprising:
        an <u>outer cam</u> having an aperture defined by an inner peripheral geometry; and

a <u>cap engaging jaw</u> displaced within the aperture of the outer cam, wherein the cap engaging jaw is smaller than the aperture of the outer cam, the cap engaging jaw being *partially rotatable* and *translatable* within the aperture relative to the outer cam, to in turn, *float* within the aperture, and further wherein the cap engaging jaw includes:

> at least two displaceable jaw components; and
>
> means for biasing the at least two displaceable jaw components into a cap engaging configuration, wherein the biasing means is positioned such that, in the absence of a cap, the at least two displaceable jaw components remain biased toward each other, and the insertion of a cap serves to overcome the biasing means, thereby moving at least one of the at least two displaceable jaw components away from at least one other of the at least two displaceable jaw components,

whereupon rotation of the outer cam, rotates the cap engaging jaw having a cap therein, to, in turn, rotate a cap onto a container.

2. The capping chuck assembly according to claim **1**, wherein the <u>cap engaging jaw</u> includes between two and approximately ten displaceable jaw components.

3. The capping chuck assembly according to claim **1**, wherein the <u>cap engaging jaw</u> includes six displaceable jaw components.

7. The capping chuck assembly according to claim **1**, wherein the <u>outer cam</u> includes a hexagonal aperture.

8. The capping chuck assembly according to claim **7**, wherein the <u>cap engaging jaw</u> includes a hexagonal outer peripheral geometry.

9. The capping chuck assembly according to claim **8**, wherein the cap engaging jaw consists of six displaceable jaw components and an o-ring positioned around an outer peripheral geometry of the six jaw components.

10. The capping chuck assembly according to claim **1**, wherein the <u>cap engaging jaw</u> includes a plurality of teeth on an inner surface of the at least two displaceable jaw components.

(*id.* at PageID.173).

## II. Legal Principles

In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), the Federal Circuit reaffirmed and further clarified the well-established principles of claim construction. The parties

do not dispute these basic governing legal principles. "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). "[T]he claims are 'of primary importance, in the effort to ascertain precisely what it is that is patented.'" *Phillips*, 415 F.3d at 1312 (quoting *Merrill v. Yeomans,* 94 U.S. 568, 570 (1876)).

"[T]he words of a claim 'are generally given their ordinary and customary meaning,'" defined as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention …." *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

As the *Phillips* Court noted, "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." 415 F.3d at 1314. In those circumstances, general purpose dictionaries may be helpful. *Id.* "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321.

When judicial construction is required, *Phillips* definitively established that the "ordinary and customary meaning" of a limitation is to be derived primarily from the intrinsic evidence. *See Phillips*, 415 F.3d at 1313-14. Therefore, the Court first considers the claims themselves, the patent

specification and, if in evidence, the prosecution history of the patent before the Patent and Trademark Office. *Id.* at 1313-17; *Vitronics*, 90 F.3d at 1582. While district courts may also rely on extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treatises, extrinsic evidence is less significant in determining the legally operative meaning of disputed claim language. *Phillips,* 415 F.3d at 1317; *Vitronics*, 90 F.3d at 1582-83.

The claims "are part of a 'fully integrated written instrument,' consisting principally of a specification that concludes with the claims." *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) (internal citation omitted)). The specification is usually dispositive of the claim construction analysis; "'it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582). However, the Court must "avoid importing limitations from the specification into the claims." *Id.* at 1323. Although the specification may describe specific embodiments of the invention, the Court must not confine the claims to those embodiments. *Id.*

### III. Analysis

The parties' claim construction dispute centers on five terms and one phrase, which incorporates three of the five terms. The parties have succinctly briefed the disputed issues, and the Court resolves them accordingly.

1. **"outer cam"** (Claims 1, 7). Plaintiff's proposed construction is: "a portion of the chuck that limits movement of the components of the cap engaging jaw and how wide the cap engaging jaw can open." Defendant's proposed construction is: "a structure containing an opening that surrounds the cap engaging jaw."

Plaintiff contends that by defining the term "outer cam" as "surrounding" the cap engaging jaw, Defendant is improperly reading the specification into the claims (Pl's. Reply, ECF No. 37 at PageID.327). Plaintiff asserts that the claims nowhere require that the outer cam completely encircle the cap engaging jaw.

Defendant maintains that claim 1, "by logical necessity," requires the outer cam to "completely encircle" the jaw because the claim requires the jaw to sit inside an "aperture" (hole) that is formed within the "outer cam" (Def's. Surreply, ECF No. 38 at PageID.335). Defendant states that by definition, the outer cam must surround the jaw the same way that a bagel must surround a marble that sits in its "aperture." The Court is not so persuaded.

The Court agrees with Plaintiff that Defendant's proposed construction improperly reads the specification into the claims. *See Phillips*, 415 F.3d at 1323. What is claimed is "an outer cam having an aperture defined by an inner peripheral geometry" ('046 Patent, Col. 5, ll. 15-16). Although a specific embodiment may involve the outer cam completely encircling the jaw, such is not mandated by the claim itself. The claim states that the outer cam has an "aperture" (hole or opening), and a cap engaging jaw is "displaced within the aperture," (*id.* at l. 17), but the claim does not require that the aperture be fully enclosed, encircled or surrounded by the outer cam. The Court therefore adopts Plaintiff's construction.

2. **"cap engaging jaw"** (Claims 1-3, 8-10). Plaintiff's proposed construction is: "two or more individually movable components in combination with something that pushes the components inward to grip a cap." Defendant's proposed construction is: "structure that includes moveable jaw components and an element that biases these components toward each other."

6

As the parties indicate, their respective definitions for "cap engaging jaw" reflect no critical distinction. The definitions each find support in the intrinsic evidence, and each offer an aspect of clarification lacking in the other. The term "cap engaging jaw" is the most prevalent disputed term at issue in the '046 patent claims, which in key part states in claim 1 that the cap engaging jaw includes: "at least two displaceable jaw components; and means for biasing the at least two displaceable jaw components into a cap engaging configuration, wherein the biasing means is positioned such that, in the absence of a cap, the at least two displaceable jaw components remain biased toward each other, and the insertion of a cap serves to overcome the biasing means, thereby moving at least one of the at least two displaceable jaw components away from at least one other of the at least two displaceable jaw components" ('046 Patent, Col. 5, ll. 26-35).

In this instance, the Court finds that the construction proposed by Defendant comports with the claim language and provides the clarification necessary. The definition proffered by Plaintiff is less concise in describing the means of biasing as "something that pushes the components inward." The Court adopts Defendant's construction of this term.

**3.** **"partially rotatable"** (Claim 1). Plaintiff's proposed construction is: "a cap can rotate within the capping chuck while being held by the cap engaging jaw, the cap does not have to rotate all the way around." Defendant's proposed construction is: the plain meaning (i.e., needs no definition).

Claim 1 states in relevant part that "the cap engaging jaw is smaller than the aperture of the outer cam, the cap engaging jaw being partially rotatable and translatable within the aperture relative to the outer cam, to in turn, float within the aperture" ('046 Patent, Col. 5, ll. 18-22). Defendant takes issue with Plaintiff's definition on the ground that it defines the term as reflecting movement

7

attributable to the *cap*, rather than the cap engaging jaw. Defendant argues that Plaintiff's proposed definition contradicts the intrinsic evidence and conflicts with the language of the claim itself. However, by the plain and express language of claim 1, the jaw engages a cap, and further, "rotation of the outer cam, rotates the cap engaging jaw having a cap therein, to, in turn, rotate a cap onto a container" ('046 Patent, Col. 5, ll. 36-38). Thus, Plaintiff's proffered construction merely includes what is imperative: that the cap engaging jaw partially rotate the cap.

Nonetheless, the Court finds no reason to define the term "partially rotatable" where there is no dispute calling the term into question. The Court therefore declines to adopt Plaintiff's proposed construction as a clarification of the term "partially rotatable."

**4.** **"translatable"** (Claim 1). Plaintiff's proposed construction is: "a cap can move sideways within the capping chuck while being held by the cap engaging jaw." Defendant's proposed construction is: "moveable along a linear path."

The Court adopts Plaintiff's construction of this term. As both parties recognize, while the claim language itself imparts no additional indication of the meaning of "translatable," the specification does provide guidance. The specification explains that "[i]n cooperation with the dimensions of cap engaging jaw **20**, outer cam **18** controllably regulates the degree of horizontal, vertical, and/or rotational displacement, which is sometimes referred to as the degree of 'float' within aperture **30**" ('046 Patent, Col. 3, ll. 57-61). Defendant acknowledges that "translatable' thus refers to the jaw's horizontal and vertical movement within the outer cam's aperture. However, the specification additionally explains that the cap engaging jaw "is readily displaceable and expandable in a plurality of vectors (i.e. any one of the jaw components can move relative to the other and relative to outer cam **18**) …" (*see id.*, Col. 3, ll. 19-21; Col. 4, ll. 20-23).

The specification's described combinations of movement support Plaintiff's proposed construction of the term "translatable" as opposed to what appears to be Defendant's more limited clarification. As Plaintiff notes, "[t]he ability to have such movement, allows the cap to be engaged by the cap engaging jaw while moving side to side within the outer cam" (ECF No. 35 at PageID.159). Plaintiff's construction is consistent with and further supported by the prosecution history, which explains that "the cap engaging jaws act as followers relative to the outer cam inasmuch as the outer cam controls the degree of relative movement (translative and rotative) of the cap engaging jaws as they are engaging a cap …" (Jovanovic Decl. Ex. B, ECF No. 35-2 at PageID.237). Thus, the translative movement is the movement that is not rotative, including the movement from side-to-side of the cap engaging jaws as occurs when a cap positioned therein.

5. **"float"** (Claim 1). Plaintiff's proposed construction is: "the components of the cap engaging jaw have a sufficient freedom of movement such that a cap held by them can both rotate and move sideways within the capping chuck." Defendant's proposed construction is: "move readily (free from external constraints)." The Court adopts Plaintiff's proposed construction.

The parties essentially agree that the term "float" encompasses some freedom of movement. Plaintiff asserts that the plain meaning of the word "float" is to "be free to move within limits" (ECF No. 35 at PageID.160, citing *Webster's Third New Int'l Dictionary* (1993) at p. 872). Defendant states that the term "float" is used in the '046 Patent interchangeably with the term "readily displaceable," meaning that the jaw must be able to "move readily" within the aperture (ECF No. 36 at PageID.295). However, Plaintiff additionally and persuasively contends that the term float as used in the '046 Patent is subject to the limits of the outer cam of the capping chuck. Claim 1 states in relevant part that "the cap engaging jaw being partially rotatable and translatable within the

9

aperture relative to the outer cam, to in turn, float within the aperture" ('046 Patent, Col. 5, ll. 19-22).

Thus, Plaintiff's proposed construction, although stated in terms of the movement of the cap engaging jaw with the cap therein, appropriately recognizes the limits set forth in the claim language. This "limited movement" construction of the term "float" finds further support in the specification. As noted above, the specification explains that the degree of "float" within an aperture likewise describes the displacement of the cap engaging jaw, as regulated by the outer cam in "horizontal, vertical, and/or rotational" directions ('046 Patent, Col. 3, ll. 57-61). The specification and the prosecution history variously describe the movement of the cap engaging jaw in the context of engaging and retaining a cap. Plaintiff's construction is consistent with this context.

Defendant argues, among other reasons, that Plaintiff's definition of the term "float" should be rejected because it means nothing more than "partially rotatable and translatable." However, because the "displacement" encompassed by the term "float" includes movement "in horizontal, vertical, and/or rotational" directions, the construction adopted reflects no fatal limitation.

6. **"partially rotatable and translatable within the aperture relative to the outer cam, to in turn, float within the aperture"** (Claim 1). Plaintiff's proposed construction is: The terms "partially rotatable," "translatable," and "float," used within this phrase, should be construed individually as above, and the other terms within this phrase should be construed in accordance with their plain meaning. Defendant's proposed construction is: "partially rotatable and moveable along a linear path, relative to the outer cam, so that it moves readily (free from external constraint) within the aperture."

The Court has declined to adopt any proposed construction of the term "partially rotatable," but has adopted Plaintiff's proposed construction of the terms "translatable" and "float." The Court finds that the above phrase in claim 1 is properly construed in accordance with the construction of the individual terms adopted by the Court.

## IV.  Conclusion

Having resolved the disputed issues of claim construction as above, the Court will enter an Order consistent with this Opinion.


Dated: September 12, 2017          /s/ Janet T. Neff
                                   JANET T. NEFF
                                   United States District Judge