UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FOGG FILLER COMPANY,

       Plaintiff,

v.

CLOSURE SYSTEMS INTERNATIONAL INC.,

       Defendant.
                                                  /

File No. 1:15-cv-724

HON. JANET T. NEFF

## OPINION

This is a patent infringement action. Plaintiff Fogg Filler Company owns a patent on a self-adjusting capping chuck assembly, Patent No. 6,508,046 (the '046 patent). Defendant Closure Systems International Inc. manufactures and sells a capping chuck called the Flex-Chuck. Plaintiff claims that the Flex-Chuck infringes several claims in the '046 patent. Plaintiff seeks summary judgment on the issue of infringement. (ECF No. 97.) In a cross-motion for summary judgment, Defendant asks the Court to find that its product does not infringe the '046 patent. (ECF No. 100.) For the reasons herein, the Court finds that Plaintiff is entitled to summary judgment because the Flex-Chuck infringes claims 1-5 and 7-10 of the '046 patent. Accordingly, the Court will grant Plaintiff's motion and deny Defendant's cross-motion.

**I. The '046 Patent**

According to Plaintiff, the '046 patent "is directed to a self-adjusting capping chuck that is used with filler and/or capper devices." (Pl.'s Br., ECF No. 98, PageID.799.) The purpose of the invention described in the patent is to "better capture and retain a cap of, for example, a beverage container." (*Id.*) The chuck described in the patent accomplishes this purpose because it is "readily

displaceable and expandable in a plurality of directions to enable the capping chuck to be self-adjusting." (*Id.*) These displacement and expansion capabilities "reduce[] the dropping and damaging of caps during the capping process." (*Id.*) In addition, they allow "caps with wider or narrower dimensional tolerances to still be properly positioned within the cap engaging jaw and properly installed on the bottles being filled." (*Id.*)

Plaintiff contends that versions 3, 4, and 5 of Defendant's Flex-Chuck[1] product directly infringe claims 1-5 and 7-10 of the '046 patent. Defendant disagrees.

The parties focus their dispute on claim 1, which is an independent claim. All the other claims asserted by Plaintiff depend on claim 1. Claim 1 reads as follows:

1. A capping chuck assembly for use in association with a capper device, comprising:

> an outer cam having an aperture defined by an inner peripheral geometry; and
>
> a cap engaging jaw displaced within the aperture of the outer cam, wherein the cap engaging jaw is smaller than the aperture of the outer cam, the cap engaging jaw being partially rotatable and translatable within the aperture relative to the outer cam, to in turn, float within the aperture, and further wherein the cap engaging jaw includes:
>
> at least two displaceable jaw components; and
>
> means for biasing the at least two displaceable jaw components into a cap engaging configuration, wherein the biasing means is positioned such that, in the absence of a cap, the at least two displaceable jaw components remain biased toward each other, and the insertion of a cap serves to overcome the biasing means, thereby moving at least one of the at least two displaceable jaw components away from at least one other of the at least two displaceable jaw components,
>
> whereupon rotation of the outer cam, rotates the cap engaging jaw having a cap therein, to, in turn, rotate a cap onto a container.

---

[1] For simplicity's sake, the Court will refer to the accused products—versions 3, 4, and 5 of the Flex-Chuck—as the Flex-Chuck. The parties do not distinguish between these different versions of the Flex-Chuck in their briefing or in their Joint Statement of Material Facts (ECF No. 104); thus, the Court assumes that there is no material difference between them.

'046 patent col. 5, lines 13-38.

In an order entered September 12, 2017, the Court construed terms in the patent claims as follows:

1. "**outer cam**" (Claims 1, 7): "a portion of the chuck that limits movement of the components of the cap engaging jaw and how wide the cap engaging jaw can open."

2. "**cap engaging jaw**" (Claims 1-3, 8-10): "structure that includes moveable jaw components and an element that biases these components toward each other."

3. "**partially rotatable**" (Claim 1): no construction adopted.

4. "**translatable**" (Claim 1): "a cap can move sideways within the capping chuck while being held by the cap engaging jaw."

5. "**float**" (Claim 1): "the components of the cap engaging jaw have a sufficient freedom of movement such that a cap held by them can both rotate and move sideways within the capping chuck."

6. "**partially rotatable and translatable within the aperture relative to the outer cam, to in turn, float within the aperture**" (Claim 1): the terms "partially rotatable," "translatable," and "float," are to be construed individually as above.

(5/2/2017 Order, ECF No. 44, PageID.359.)

**II. Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must

present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The function of the Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "A dispute is genuine if there is evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.' A factual dispute is material only if it could affect the outcome of the suit under the governing law." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 418 (6th Cir. 2015) (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

### III. Patent Infringement

As the patentee, Plaintiff has the burden of proving patent infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 193 (2014). It can meet that burden by showing that "every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000). This is known as "literal infringement." *Id.*

Infringement is a question of fact. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011). Accordingly, "a literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

The language of the asserted claim and the nature of the accused product frame the infringement inquiry. *See Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). Thus, for instance, claim language reciting a capability is infringed if the accused product has that capability. *See Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991) (claim referring to "programmable selection means" is infringed where the accused device is "capable of operating" in that mode; actual operation in that mode is not necessary).

## IV. Analysis

### A. Claim 1

#### 1. Capping Chuck Assembly

Claim 1 begins with "A capping chuck assembly for use in association with a capper device." There is no dispute that the Flex-Chuck is a capping chuck intended for use with capper devices to apply caps onto bottles. (Joint Statement of Material Facts ¶¶ 1-2, ECF No. 104.)

#### 2. Outer Cam

One element of the capping chuck assembly is "an outer cam having an aperture defined by an inner peripheral geometry." The Court has construed "outer cam" to mean that "portion of the chuck that limits movement of the components of the cap engaging jaw and how wide the cap engaging jaw can open." There is no dispute that the Flex-Chuck has an outer cam that meets this definition. (Joint Statement of Material Facts ¶¶ 3-4.)

#### 3. Cap Engaging Jaw

Another element of the capping chuck assembly is "a cap engaging jaw displaced within the aperture of the outer cam." The Court has construed "cap engaging jaw" to mean a "structure that includes moveable jaw components and an element that biases these components toward each other." There is no dispute that the Flex-Chuck has, within its outer cam, moveable jaw components and an element that biases components toward each other. (Joint Statement of

Material Facts ¶¶ 4-8.) Two elastomeric o-rings in the Flex-Chuck bias the jaw components toward one another.

### 4. Smaller

Claim 1 describes a cap engaging jaw that is smaller than the aperture of the outer cam, and that is true of the jaw in the Flex-Chuck. (Joint Statement of Material Facts ¶ 5.)

### 5. Partially Rotatable

The cap engaging jaw described in claim 1 is partially rotatable. The Court gave no additional construction to the term "partially rotatable." In the opinion of Plaintiff's expert, J. Michael Ryan, the cap engaging jaw in the Flex-Chuck is partially rotatable because Ryan could "by hand rotate the cap engaging jaw relative to the outer cam through at least some rotation." (Ryan Report, ECF No. 105, PageID.892.) Defendant offers no evidence to the contrary. Thus, there is no dispute that the cap engaging jaw of the Flex-Chuck is partially rotatable.

### 6. Translatable / Float

The cap engaging jaw is also "partially rotatable and translatable within the aperture relative to the outer cam," such that it "floats" within that aperture. The Court has construed "translatable" to mean that "a cap can move sideways within the capping chuck while being held by the cap engaging jaw." In addition, the Court construed "float" to mean that "the components of the cap engaging jaw have a sufficient freedom of movement such that a cap held by them can both rotate and move sideways within the capping chuck."

*(a) Plaintiff's evidence and argument*

Ryan opines that the cap engaging jaw in the Flex-Chuck is translatable because, when a cap is in the chuck, he is "able to move the cap sideways within the capping chuck[.]" (Ryan Report, PageID.892.) In addition, he asserts that the jaw "floats" according to the Court's

definition because there is "sufficient movement such that when I place a cap in the cap engaging jaw, the cap can both rotate and move sideways within the cap engaging jaw." (*Id.*)

Defendant's expert, Dr. Matthew Spenko, agrees with the results of Ryan's test. In other words, he agrees that, when a bottlecap is placed in the Flex-Chuck, a person can rotate the cap and move it sideways with their hand. (Spenko Dep. 78-81, ECF No. 105.) Accordingly, Plaintiff argues that there is no dispute that the Flex-Chuck's cap engaging jaw is partially rotatable and translatable such that it floats within the aperture of the outer cam.

*(b) Defendant's response*

Defendant responds that Ryan's opinion is not sufficient to show infringement because Ryan did not examine the Flex-Check *in operation*. Ryan simply manipulated a cap inside the jaw using his hand; he did not observe a cap moving or rotating within the jaw while the Flex-Chuck was *in use on a capper device*, picking up and then placing a cap on a bottle.

Apparently, one potential benefit of the patented invention is that it can compensate for misalignment between the jaw and the cap when the jaw is acquiring the cap, or between the cap and the bottle when the chuck applies the cap to a bottle. The float capability allows the cap/jaw to move sideways to correct this misalignment. However, Dr. Spenko testified that when the Flex-Chuck is in use on a capping device, a cap held by the jaw does not move from side to side. (Spenko Dep. 79; *see also* Spenko Decl., ECF No. 105, PageID.951.) The reason for this is that other components in the capping process have some freedom of movement besides the cap engaging jaw, and those components are more likely to move to correct a misalignment. (Spenko Decl., PageID.951.)

For instance, when Spenko tested the Flex-Chuck at Defendant's factory, he observed that both the spindle holding the chuck and the bottle receiving the cap have sufficient freedom of movement to compensate for a misalignment between the cap and bottle. (Spenko Decl.,

7

PageID.951-952.) Spenko believes that, when the bottle and cap are not aligned, "the bottle would move [to the cap] before the cap would move within the capping chuck." (*Id.*, PageID.952.) Also, because Spenko observed *more* freedom of movement in the spindle than in the cap engaging jaw, he believes that "the chuck/spindle would align to the bottle before a cap would move within the Flex-Chuck." (*Id.*) Even Plaintiff's expert acknowledged that it is "possible" for a misaligned bottle to move toward the cap when the chuck is applying the cap to the bottle, and for a misaligned cap to move toward the jaw when the Flex-Chuck is acquiring the cap. (Ryan Dep., PageID.940-941.)

According to Defendant, the operating context is important; even claim language that recites a capability must consider that context when considering whether the accused device infringes the patent. Thus, Defendant argues that Plaintiff must provide evidence that the Flex-Chuck is capable of operating in the manner described in the patent *while in use on a capping machine*. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) ("[W]e have held that, to infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode.") (quoting *Intel Corp.*, 946 F.2d at 832). In other words, Defendant argues that Plaintiff must provide evidence that a cap in the Flex-Chuck moves from side to side when the chuck is capping bottles.

Defendant's argument is not persuasive because it is not consistent with the language of the claim, or with the way courts have applied such language. The claim requires the cap engaging jaw to be "rotatable" and "translatable." Like the term "programmable" in *Intel*, these terms simply require capabilities. They do not require the accused device to actually *perform* any particular steps whenever the device is in use, as when the Flex Chuck is attached to a capper at Defendant's factory. Plaintiff's expert has shown that the Flex-Chuck has these capabilities.

8

Defendant's argument might have some merit if attaching the Flex-Chuck to a capper changed the capabilities of the chuck—i.e., by restricting the movement of the cap engaging jaw—but there is no evidence that is the case. Accordingly, Plaintiff's evidence is sufficient to show infringement.

In effect, Defendant is arguing that Plaintiff must show how the cap engaging jaw actually operates when it is in use; however, Plaintiff need only show that the cap engaging jaw is *capable* of the operation described in the patent. Plaintiff does not have to show that this capability is *actually used* when the Flex-Chuck is in operation on a capping device. *Finjan* is instructive on this point. In that case, the Federal Circuit held that a scanning technology infringed a patent describing certain software capabilities even where those capabilities were present, but not activated, in the accused product. *Finjan*, 626 F.3d at 1205. Similarly, the float capability described in the '046 patent is present in the Flex-Chuck. It does not matter whether that capability is actually used when the chuck is capping bottles.

Defendant also contends that Plaintiff improperly altered the "intended operating configuration" of its device to prove infringement, citing *High Tech Medical Instrumentation, Inc. v. New Mage Industries, Inc.*, 49 F.3d 1551 (Fed. Cir. 1995). In *High Tech*, the district court held that an endoscopic camera likely infringed a patent on a camera that is "rotatably coupled" to its housing. *Id.* at 1553. Although the accused camera "as designed, sold, and intended for use" was "rigidly coupled" to its housing, the district court nevertheless held that the camera likely infringed the patent because it could rotate in its housing after loosening two set screws and a retaining ring. *Id.* at 1555. The district court "read *Intel* to mean that if a particular device can be altered without undue difficulty to operate in an infringing manner, the device, as sold, must be deemed to infringe." *Id.* The Court of Appeals for the Federal Circuit disagreed, holding that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations

9

of a patent claim." *Id.* Similarly, Defendant contends that Plaintiff's expert altered the "intended operating configuration" of the Flex-Chuck by testing it outside its intended operating context, which is when the chuck is installed on a capper.

Defendant's reliance on *High Tech* is misplaced. Plaintiff's expert did not alter the configuration of the Flex-Chuck to determine whether it infringed the '046 patent. He simply rotated and moved a cap while the cap was held by the jaw of the chuck. This test demonstrated that the cap engaging jaw is capable of the float movement described in the patent. Importantly, the patent describes only the elements of a capping chuck. It does not describe the entire chuck-and-capper apparatus. Unlike the set screws in *High Tech*, which were part of the accused product, the capper is not part of the Flex-Chuck. Indeed, the Flex-Chuck is a replaceable part, designed to be removed from the capper when necessary. Thus, detaching the chuck from the capper does not alter the chuck itself.

Defendant also seizes on the phrase "sufficient freedom of movement" in the Court's construction of the term "float" to argue that "sufficient" refers to the amount of force required to move the cap sideways in the jaw when the Flex-Chuck is in operation on a capper device. As discussed above, Defendant's expert believes that a cap held by the Flex-Chuck does not actually move from side to side when the Flex-Chuck is capping bottles because, in the event of a misalignment between the cap and bottle, more force is necessary to move a cap in the jaw than is necessary to move either the bottle or the spindle holding the chuck. (Spenko Report. ECF No. 105, PageID.951-952.) These components will naturally follow the "path of least resistance"; consequently, whenever there is a misalignment, the bottle or spindle will move before the cap does. (*Id.*) Because the cap does not move in these conditions, Defendant argues that there is not

"sufficient" freedom of movement in the cap engaging jaw for the Flex-Chuck to infringe the patent.

Contrary to Defendant's argument, neither the language of the patent nor the Court's construction of it incorporates a limitation requiring the cap engaging jaw to move from side to side when subjected to force in a misalignment situation. The phrase "sufficient freedom of movement" refers to the *dimensional* properties of the jaw "relative to the outer cam." *See* '046 patent, col. 5, line 22. In other words, there must be sufficient room inside the aperture of the outer cam to allow the jaw to expand so that a cap held by the jaw can rotate and move from side to side. The phrase does not imply anything with regard to the quantity of force required to move the cap held by the jaw. Thus, it does not require the cap to move sideways in the jaw whenever there is a misalignment in the capping process. In effect, Defendant is attempting to add a limitation to the patent that does not exist.

Defendant worries about the possibility of a slippery slope if the Court allows Plaintiff's evidence of the Flex-Chuck's float capability. Defendant surmises that Plaintiff's expert "may as well have taken a sledgehammer to the chuck to see whether that would cause the cap to move." (Def.'s Response 15, ECF No. 101.) That concern is unwarranted here. Plaintiff's expert did not use a sledgehammer; instead, he simply applied hand pressure to the cap. Moreover, Defendant clearly designed the Flex-Chuck to allow for some freedom of movement by the cap engaging jaw, as the name "Flex-Chuck" implies. The individual jaws are not fixed in place; they are held by elastic rings that can expand and contract to hold a cap. If, instead, the jaws were essentially immobile such that Plaintiff had to use a sledgehammer to move a cap held by them, then that demonstration would have altered the chuck, creating the problem in *High Tech*. Thus, Defendant's argument is meritless.

Finally, Defendant argues that the Flex-Chuck does not infringe the patent because its cap engaging jaw has one additional part that is not described in the patent: a brown mounting plate to which the cam and the individual jaws are connected. (*See* Ryan Dep., PageID.929, 931 (discussing the mounting plate).) The mounting plate is stationary within the Flex-Chuck. Consequently, Defendant argues that the cap engaging jaw in the Flex-Chuck is neither "partially rotatable" nor "translatable" to "float" within the aperture of the outer cam.

Defendant's argument ignores the definition of "cap engaging jaw" in the patent and in the Court's construction, both of which indicate that the jaw consists of (1) moveable jaw components and (2) an element that biases these components toward each other. Applying this definition, the cap engaging jaw in the Flex-Chuck includes the moveable jaws and the o-rings that bias the jaws toward one another; it does not include the mounting plate.

Defendant cites deposition statements by Ryan, Plaintiff's expert witness, in which Ryan gave his "interpretation" that the cap engaging jaw of the Flex-Chuck includes the mounting plate. (Ryan Dep., PageID.931.) However, Ryan's interpretation is not controlling, and his expertise is not necessary or helpful for resolving this issue. Both the language of the patent and the Court's definition of cap engaging jaw clearly refer to the following two components: the moveable jaws and the biasing element. There is no genuine dispute that the mounting plate is not one of those two components.

Moreover, Defendant's assertion that the cap engaging jaw of the Flex-Chuck does not move from side to side ignores the Court's construction of translatable and float, which focus on movement of the cap rather than the jaw as a whole. Accordingly, the presence of the mounting plate is irrelevant to the issue of infringement.

In summary, there is no genuine dispute that the Flex-Chuck infringes claim 1 of the '046 patent. Defendant's arguments to the contrary are not persuasive.

### B. Claims 2-5, 7-10

Plaintiff also asserts that the Flex-Chuck infringes claims 2-5 and 7-10 of the '046 patent. As indicated, these claims are dependent upon claim 1; that is, they require the existence of a capping chuck assembly as described in claim 1. Plaintiff contends that the parties do not dispute that the Flex-Chuck infringes these other claims, if it infringes claim 1. Indeed, Defendant rests its entire argument on non-infringement of claim 1. It offers no response to Plaintiff's contention that the Flex-Chuck infringes the other claims. The Court will briefly analyze the issue, however, because Plaintiff bears the burden of proof on infringement. Defendant's failure to respond does not necessarily mean that Plaintiff is entitled to summary judgment.

#### 1. Claim 2

Claim 2 specifies a cap engaging jaw that has "between two and approximately ten displaceable jaw components." The Flex-Chuck has six displaceable jaw components, which satisfies claim 2 because six is between two and ten. (Ryan Report, PageID.897; Joint Statement of Material Facts ¶¶ 10-11.)

#### 2. Claim 3

Claim 3 specifies a cap engaging jaw that includes six displaceable jaw components. The cap engaging jaw of the Flex-Chuck has six displaceable jaws. (*Id.*)

#### 3. Claims 4 & 5

Claim 4 specifies a "biasing means [that] comprises an elastomeric member," and claim 5 specifies a "biasing means [that] comprises an o-ring." The biasing means in the Flex-Chuck consists of two elastomeric o-rings, satisfying claims 4 and 5. (Ryan Report, PageID.899; Joint Statement of Material Facts ¶¶ 12-13.)

### 4. Claim 7

Claim 7 specifies an outer cam with a hexagonal aperture. The outer cam of the Flex-Chuck has a hexagonal aperture. (*Id.*, PageID.901; Joint Statement of Material Facts ¶ 14.)

### 5. Claim 8

Claim 8 specifies a cap engaging jaw with a "hexagonal outer peripheral geometry." The six jaws of the cap engaging jaw in the Flex-Chuck make a hexagonal outer peripheral geometry. (*Id.*, PageID.902; Joint Statement of Material Facts ¶ 15.)

### 6. Claim 9

Claim 9 specifies a cap engaging jaw consisting of "six displaceable jaw components and an o-ring positioned around an outer peripheral geometry of the six jaw components." The o-rings that bias the jaws of the Flex-Chuck are positioned around the outer peripheral geometry of the six jaw components. (*Id.*, PageID.903; Joint Statement of Material Facts ¶ 16.)

### 7. Claim 10

Claim 10 specifies a cap engaging jaw with "a plurality of teeth on an inner surface of the at least two displaceable jaw components." The displaceable jaws of the Flex-Chuck each have at least three teeth. (*Id.*, PageID.904; *see* Joint Statement of Material Facts ¶ 17.)

In summary, there is no genuine dispute that the Flex-Chuck infringes the dependent claims as well.

## Conclusion

For the reasons herein, the Court finds that versions 3, 4, and 5 of the Flex-Chuck infringe claims 1-5 and 7-10 of the '046 patent. Accordingly, the Court will grant Plaintiff's motion for summary judgment as to infringement and deny Defendant's cross-motion for summary judgment as to non-infringement.

The Court will enter an order consistent with this Opinion.

Dated: April 14, 2020 /s/ Janet T. Neff
Janet T. Neff
United States District Judge